# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| LUKE DEPTULA,<br><br>    Plaintiff,<br><br>v.<br><br>CITY OF WORCESTER, JEFFREY CARLSON, JAMES E. BATES, KELLEN E. SMITH, SGT. MATTHEW EARLY, DANA RANDALL, LARRY WILLIAMS, and GARY GEMME,<br><br>    Defendants. | CIVIL ACTION<br>NO. 17-cv-40055-TSH |

## ORDER

### July 19, 2018

Hennessy, M.J.

  Plaintiff Luke Deptula filed this civil rights lawsuit against Defendants the City of Worcester ("the City"), Worcester Police Department ("WPD") officers Jeffrey Carlson, James Bates, Kellen Smith, and Matthew Early, and former WPD Chief Gary Gemme.[1]  Plaintiff alleges that Defendants Carlson, Bates, Smith, and Early used excessive force against him or failed to intervene to prevent the use of excessive force against him during an incident on March 31, 2014.  Plaintiff also has asserted claims against the City, Defendant Early, and Defendant Gemme for supervisory liability and municipal liability under Monell v. Department of Social Services, 436 U.S. 658 (1978).

---

[1] Plaintiff also sued WPD officers Dana Randall and Larry Williams, but all claims against them have been voluntarily dismissed.  See docket #37.

1

District Judge Hillman referred to me for a ruling Plaintiff's motion to compel Defendant Smith to answer certain deposition questions. Docket #43; see docket #46 (order of reference). Defendants oppose the motion. See docket #50. The parties argued the motion at a hearing held July 17, 2018. At that hearing, Defendants proffered ex parte information relating to Smith's reasons for refusing to answer the deposition questions in dispute.

For the following reasons, Plaintiff's motion to compel is GRANTED IN PART AND DENIED IN PART. I will permit Plaintiff to reopen Smith's deposition to ask specific, limited questions as set forth below.

I.   BACKGROUND

Plaintiff's complaint, docket #1-1, alleges as follows. On March 31, 2014, Defendants Carlson, Bates, Smith, and Early were following Plaintiff in undercover vehicles, waiting for a court to issue a search warrant for Plaintiff's apartment and car. Id. ¶¶ 21-22. Those defendants followed Plaintiff to a mechanic's shop. Id. ¶ 22. Once Plaintiff arrived there, Smith ordered the other officers to stop and search Plaintiff and to detain him while the officers waited for the warrant. Id. ¶ 23.

Defendant Bates approached Plaintiff, grabbed him by the throat, and forced him onto the hood of Plaintiff's car. Id ¶ 26. Officers handcuffed Plaintiff and searched him and the car, but did not find any contraband. Id. ¶ 28. Bates surmised that no contraband was found "because [Plaintiff] ate something." Id. ¶ 30. Carlson said, "You ate them all you fucking pussy?" and punched Plaintiff twice in the head. Id. ¶ 31. Plaintiff staggered and yelled, "Did he just hit me?" Id. ¶ 33. After Bates helped Plaintiff up, Carlson punched Plaintiff in the head two more times. Id. ¶ 34. Williams, Bates, and Early were present throughout and failed to intervene. Id. ¶ 38.

At some point, Smith placed Plaintiff in a car and drove to Plaintiff's apartment. Id. ¶ 40. Plaintiff leaned over in pain while inside the car. Id. ¶ 41. Smith asked why Plaintiff was leaning over, and Plaintiff said he had been punched. Id. In response, Smith menaced Plaintiff with a closed fist and yelled, "Good, do you want me to punch you now?" Id. ¶ 41. The officers then held Plaintiff at his apartment without medical care while they searched the apartment. Id. ¶ 44. Plaintiff later was taken to the police station for booking and again was not offered medical care. Id. ¶ 45.

According to the complaint, Defendants prepared police reports falsely claiming that Plaintiff "place[d] multiple, small light colored items into his mouth" believed to be illegal narcotics. Id. ¶ 71. The reports also falsely stated that Carlson slapped Plaintiff twice with an open hand "in an effort to dislodge the evidence" from Plaintiff's mouth. Id. ¶ 72. The reports said Plaintiff "was chewing and swallowing pills causing a white chalky substance to be visible on his lips and tongue." Id. The reports further stated that the officers offered Plaintiff medical attention, but Plaintiff declined. See id. ¶¶ 69-74. Smith's report allegedly stated falsely that officers ordered Plaintiff to exit his car before arresting him, and that Plaintiff told the officers he was uninjured and was offered, but declined, medical care. Id. ¶ 75.[2]

Plaintiff deposed Smith on May 1, 2018. See docket #45-6 (excerpted deposition transcript). Smith testified that he was in the process of retiring from the WPD and that his retirement was pending before the Worcester city retirement board. See id. at 1-2.[3] When asked why he was retiring, Smith refused to say, citing privileges under HIPAA, "a privacy right[,] and

---

[2] The complaint also dedicates several pages to describing the WPD's alleged practice or policy underlying Plaintiff's Monell claim. See docket #1-1 ¶¶ 77-134.

[3] Citations to the deposition transcript reference the page numbers assigned by the Court's electronic filing system.

3

other privileges." Id. at 2. Later, Plaintiff asked two questions relating to Smith's memory. First, Plaintiff asked, "Is there anything about a medical or a mental condition that prevents your ability to remember certain facts that may be pertinent to the questions that I ask you today?" Id. at 3. Second, Plaintiff asked, "Are you taking any type of medication that would affect your ability to remember things short term or long term?" Id. Smith replied that his answers to both questions are "protected by HIPAA." Id. Finally, Plaintiff asked several questions about a separate incident that gave rise to another lawsuit filed against Smith. Id. at 3-4. Smith testified that he could not recall certain details pertaining to that case. Id. Plaintiff asked, "And does that have to do—is your memory affected because of the medical condition for which you seek protection under HIPAA? Does it have to do with anything of that [sic]?" Id. Smith replied, "It may." Id.

Through the instant motion, Plaintiff seeks an order compelling Smith to answer the questions quoted above. Defendants made an ex parte proffer at the motion hearing respecting the reasons for Smith's retirement from the WPD. After the proffer, I deemed it appropriate to state in open court that Smith was diagnosed with a condition after an incident on May 5, 2015 that caused Smith to seek professional care. I then took Plaintiff's motion under advisement.

Lastly, I note that Judge Hillman has entered a protective order in this case. Docket #32. The order applies to, among other things, "portions of deposition testimony concerning the contents of [certain] documents and . . . confidential information." Id. ¶ 1. Among the documents protected by Judge Hillman's order are "documents pertaining to medical and/or psychological treatment of any City of Worcester employee" and "records related to [the] personal or financial history of any City of Worcester employee." Id. The protective order

provides that Plaintiff cannot use such documents or confidential information for any purpose other than litigating the instant case. See id. ¶ 2.

II.     LAW

The purpose of discovery is to enable the parties "to obtain 'the fullest possible knowledge of the issues and facts before trial.'" LeBarron v. Haverhill Coop. Sch. Dist., 127 F.R.D. 38, 40 (D.N.H. 1989) (quoting 8 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure: Civil § 2001, at 13). Federal Rule of Civil Procedure 26(b)(1) governs the scope of discovery. In relevant part, the rule provides:

> Unless otherwise limited by court order, . . . [p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1). If a party objects to the relevance of a discovery request, the court may "become involved to determine whether the discovery is relevant to the claims or defenses." In re Subpoena to Witzel, 531 F.3d 113, 118 (1st Cir. 2008) (quoting Fed. R. Civ. P. 26(b)(1)). In this regard, "Rule 26 vests the trial judge with broad discretion to tailor discovery narrowly." Cutter v. HealthMarkets, Inc., No. 10-cv-11488-JLT, 2011 WL 613703, at *2 (D. Mass. Feb. 10, 2011) (quoting Crawford-El v. Britton, 523 U.S. 574, 598 (1998)).

The instant motion also implicates Federal Rule of Civil Procedure 26(c)(1). Under that rule, "[t]he court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense . . . ." Fed. R. Civ. P. 26(c)(1). Among other things, the court may "forbid[] the disclosure or discovery," "forbid[] inquiry into certain matters," "limit[] the scope of disclosure or discovery to certain matters," or

"designate[] the persons who may be present while the discovery is conducted." Fed. R. Civ. P. 26(c)(1)(A), (D), (E). "Under Rule 26(c), the trial court must balance the burden to the nonmovant in allowing the requested discovery against the likely benefit of the discovery to the movant." McEvoy v. Hillsborough Cty., No. 09-cv-431-SM, 2011 WL 1813014, at *8 (D.N.H. May 5, 2011) (citing Gill v. Gulfstream Park Racing Ass'n, Inc., 399 F.3d 391, 400 (1st Cir. 2005)).

"In a discovery dispute, the burden to establish an applicable privilege rests with the party resisting discovery." FDIC v. Ogden Corp., 202 F.3d 464, 460 (1st Cir. 2000) (citation omitted). A discovery request in a civil rights action for police records and related information is subject to the "official information" privilege recognized by District Judge Weinstein in King v. Conde, 121 F.R.D. 180 (E.D.N.Y. 1988). This is a qualified privilege: in applying it, "the court must balance the public interest in nondisclosure against the need of the particular litigant for access to the privileged information." Shea v. McGovern, No. 1:08-cv-12148-MLW, 2011 WL 322652, at *5 (D. Mass. Jan. 31, 2011) (citations omitted). This balancing test contemplates several factors:

> The factors disfavoring disclosure [include] the threat to the safety of police officers, the invasion of the privacy of police officers, . . . and state privacy law. The factors favoring disclosure are the relevance of the material to the plaintiff's case, the importance of the material to the plaintiff's case, the strength of the plaintiff's case, and the importance to the public interest in releasing the information.

Nat'l Cong. for Puerto Rican Rights ex rel. Perez v. City of New York, 194 F.R.D. 88, 95-96 (S.D.N.Y. 2000) (quoting Morrissey v. City of New York, 171 F.R.D. 85, 92 (S.D.N.Y. 1997) (citing King, 121 F.R.D. at 190-96)). Of these factors, the importance of the material to the plaintiff's case has been recognized as "a most important factor" or "the most important" factor of all. King, 121 F.R.D. at 194 (citations and quotations omitted). Moreover, as Judge

6

Weinstein persuasively explained, when a discovery request "touch[es] on intuitively more private domains"—such as, for example, "an officer's psychiatric history"[4]—disclosure is permissible only if it "serves important public concerns." Id. at 191 (citing Whalen v. Roe, 429 U.S. 589, 597 (1977)), and Fraternal Order of Police, Lodge 5 v. City of Philadelphia, 812 F.2d 105, 115 (3d Cir. 1987)).[5]

III. ANALYSIS

I find that the information Smith seeks to protect from disclosure is privileged. It relates to a sensitive health issue that has been diagnosed and treated. Its disclosure would invade Smith's privacy, and could potentially expose him to embarrassment and other consequences. Its disclosure may even aggravate the health issue and compromise the success of any treatment. Finally, given that the diagnosis was precipitated by an incident that occurred more than a year after the episode that is the subject of the instant suit, it is not clear that the health issue is related to Smith's acts in his public capacity as a police officer. See King, 121 F.R.D. at 191 (quoting Nixon v. Adm'r of Gen. Servs., 433 U.S. 425, 457 (1977)) ("[A] public official's privacy interest is in 'matters of personal life unrelated to any acts done by them in their public capacity.'"). This conclusion is not dispositive, however. The official information privilege is qualified, and

---

[4] This illustrative reference by Judge Weinstein to psychiatric history is not meant to indicate that Defendant Smith's condition is psychiatric. To the contrary, as set forth below, I deem it inappropriate to disclose the nature of Defendant Smith's condition.

[5] Defendants argue that Smith's answers are protected by other privileges, one arising from the Fourteenth Amendment—which according to Defendants "provides qualified protection for medical records"—and the other from the Health Insurance Portability and Accountability Act of 1996, Pub. L. No. 104-191, 110 Stat. 1936, commonly known as HIPAA. See docket #50 at 6. Defendants' supporting citations are inapposite: the cited cases do not discuss disclosure of the general nature of an individual's medical condition in the context of a pending retirement from public service. See id. at 5-8. In any case, the privileges Defendants invoke call for the same balancing test as the official information privilege discussed above. Compare docket #50 at 6 (arguing the Court should balance Defendant Smith's individual right to privacy against Plaintiff's interest in obtaining the information) with King, 121 F.R.D. 180, 188 (E.D.N.Y. 1988) ("The federal courts must balance the interests favoring and disfavoring disclosure in order to resolve discovery disputes of this kind."). Thus, I would reach the same conclusions if I applied the other privileges cited by Defendants.

the Court must balance Smith's privacy interest against the relevance of the information to Plaintiff's case.

Plaintiff's memorandum offers four arguments in support of relevance. See docket #45 at 10-11. The first is that information about Smith's condition is relevant to Smith's memory and ability to testify. Id. That may be; but I find that it is not sufficiently relevant and necessary to warrant disclosure. As Plaintiff correctly argues, a fact finder must be positioned to evaluate a witness's ability to remember and testify. Cf. United States v. Moore, 923 F.2d 910, 913 (1st Cir. 1991) (citations omitted) (noting in a criminal case that evidence about a prior health condition would be relevant "if it were to provide some significant help to the jury in its efforts to evaluate the witness's ability to perceive or to recall events or to testify accurately"); United States v. Mazzola, 217 F.R.D. 84, 89 (D. Mass. 2003) (same).[6] Here, Smith already has testified that the condition "may" affect his memory. In addition, when asked at deposition about details of other instances in which he allegedly used, or countenanced the use of, excessive force, Smith responded that he could not recall. Thus, I find there is already a basis on which a fact finder can assess Smith's testimonial capacities. However, to protect Plaintiff's important interest in inquiring about Smith's memory, I will permit limited further questioning, as described below, that will clarify the effects of Smith's condition and treatment on his memory generally, and on his memory of the March 31, 2014 incident in particular. I believe all of this can be done without disclosing Smith's condition.

Second, Plaintiff argues that the information is relevant to Smith's fitness to serve as a police officer and to Smith's conduct in connection with Plaintiff's surveillance and arrest. See docket #45 at 10. I reject this argument. First, Smith's fitness to serve is not material. Rather,

---

[6] Again, the fact that these citations happen to discuss psychiatric conditions is not meant to imply that Smith's condition is psychiatric. Rather, for present purposes, the cases serve as examples of medical information generally.

the question is whether Smith assaulted Plaintiff, failed to intervene to prevent the use of excessive force against Plaintiff, or prepared a false police report. Second, the information is not relevant because, as noted above, the incident that caused Smith to seek professional care, as well as the diagnosis of Smith's condition, postdate the March 31, 2014 incident by more than a year. If Plaintiff's argument is that Smith may have suffered from the condition before May 2015, and that the condition may have affected Smith's conduct before May 2015, nothing hindered Plaintiff from asking at Smith's deposition questions about alleged misconduct before May 2015. Indeed, Plaintiff inquired into at least three instances of prior alleged misconduct involving Smith. Finally, if Plaintiff's argument is that the condition makes Smith more likely to have engaged in the conduct Plaintiff alleges occurred on March 31, 2014, I find disclosure only marginally relevant. Even assuming for argument's sake that Smith's condition caused those who suffer from it to act violently, Plaintiff might hope for an expert to opine on such a possibility. I find such an argument insufficiently probative to justify invading Smith's privacy by disclosing the condition.

Third, Plaintiff claims that the information is relevant to his supervisory and Monell claims because it would show that Smith's supervisors failed to take appropriate action. Again, because the condition was not diagnosed until over a year after the incident at issue, disclosure of the condition does not advance this argument. However, I will allow Plaintiff to ask Smith when he disclosed his condition to the City or WPD. As to the Monell claim, it is unclear what policy Plaintiff seeks to prove by asking the disputed questions. The evidence, as the Court understands it, will show that the City sought to involuntarily retire Smith. In other words, upon learning of Smith's condition, the City took steps to relieve him of his ability to serve the public as a police

9

officer. Far from acting with indifference to the safety of the community, it appears that the City acted to enhance it.

Lastly, Plaintiff claims the information is relevant if the condition "is linked to misconduct of 'evil motive or intent.'" Docket #45 at 11 (citations omitted). I invited counsel to elaborate on this claim at the motion hearing. As best as I can understand, this argument effectively restates Plaintiff's contention that the condition's existence proves Smith engaged in misconduct during Plaintiff's arrest. I reject this argument for the reasons stated above: it appears meritless, and Smith's condition did not surface and was not diagnosed until more than a year after the March 31, 2014 incident took place.

Balancing the parties' interests, I find that Plaintiff is entitled to limited additional information concerning the impact of the condition and related treatment on Smith's memory. I therefore order Smith to answer only the following specific questions:

- Did Defendant Smith receive treatment for his condition after he stopped working for the WPD?
- During what periods of time has Defendant Smith received treatment for his condition?
- What impact, if any, do Defendant Smith's condition and treatment have on his memory generally?
- What impact, if any, do Defendant Smith's condition and treatment have on his memory of the incident on March 31, 2014?
- When did Defendant Smith disclose his condition to the City or the WPD?

This order is subject to the following limitations. In answering these questions, Smith is not required to provide any information concerning the nature of the condition or the nature of the treatment he has received for the condition. Further, pursuant to Federal Rule of Civil Procedure 26(c)(1)(E), and with the assent of Plaintiff's counsel, I order that Plaintiff Deptula shall not be present at Smith's reopened deposition. Finally, I order that Smith's answers to these questions shall be subject to the protective order entered by Judge Hillman in this case. See Fed. R. Civ. P. 26(c). If, in service of Federal Rule of Civil Procedure 1, the parties can

agree on a more efficient and economical way for Smith to respond, such as an affidavit or stipulation, the parties are free to do so.

The reopened deposition is not an opportunity for Plaintiff to inquire about information that counsel claims to have reliably obtained concerning Smith allegedly using or possessing prescription drugs. I am aware of this possibility only because, ignoring the Local Rules, Plaintiff's counsel moved in the middle of the motion hearing to supplement the record with an affidavit addressing that topic. I denied Plaintiff's oral motion on procedural grounds. To be clear, the reopened deposition is limited to the questions listed above.

## **Conclusion**

Plaintiff's motion to compel, docket #43, is GRANTED IN PART AND DENIED IN PART as set forth above.

/s/ David H. Hennessy
David H. Hennessy
U.S. Magistrate Judge